IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROMAN T. TATARINOV,

        Petitioner,        6:11-cv-438-TC

        v.        FINDINGS AND RECOMMENDATION

JEFF PREMO,

        Respondent.

COFFIN, Magistrate Judge.

    Petitioner is in the custody of the Oregon Department of Corrections pursuant to a Judgment from the Washington County Circuit Court after convictions for Identity Theft (27 counts), Forgery 1, and Criminal Possession of a Forged Instrument. Exhibit 101. After a stipulated facts bench trial convicting petitioner, the court imposed various concurrent and consecutive 13 month sentences of imprisonment for each count for a total of 117 months of imprisonment.

1 - FINDINGS AND RECOMMENDATION

*Id.*[1]

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed in a written opinion and the Oregon Supreme Court denied review. Petitioner filed a successive appeal, but the Court of Appeals dismissed the action on its own motion. Exhibits 107 - 112, and 147.

Petitioner filed a Second Amended Petition for Post-Conviction relief, but the Marion County Circuit Court denied relief. Exhibit 140. The Oregon Court of Appeals affirmed in a written opinion, and the Oregon Supreme Court denied review. Exhibits 141 - 146.

Petitioner filed a petition under 28 U.S.C. § 2254 alleging two claims for relief, each with multiple sub-parts. Respondent now moves to deny relief on the grounds that "[a]ll of claim Two and three of Claim One's sub-parts are procedurally defaulted. Claim One's remaining three subparts were correctly denied in state court decisions entitled to deference under 28 U.S.C. § 2254(d) and (e)(1)." Response (#14) p. 1-2.

Under 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the

---

[1] This sentence was to be served consecutively to the sentence petitioner received for two separate Multnomah County cases of seven counts of Identity Theft.

2 - FINDINGS AND RECOMMENDATION

State[.]" Exhaustion occurs when a petitioner has given the state courts a "full and fair" opportunity to consider and resolve all federal claims. Keeney v. Tomayo-Reyes, 504 U.S. 1, 10 (1992). If a petitioner can present a claim to the state's Supreme Court, he must do so to properly exhaust that claim. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).

To "fairly present" a federal claim in state court, habeas petitioners must "include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996).; see also, Castillo v. McFadden, 399 F.3d 993, 1000 (9th Cir. 2005); see also, Insyxiengmay v. Morgan, 403 F.3d 657, 668 (9th Cir. 2005) ("In [the Ninth Circuit], a petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law."); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (pr curiam) (holding that, when a petitioner failed to cite federal case law or mention the federal constitution in his state court briefing, he did not alert the state court to the federal nature of his claims).

Furthermore, to properly exhaust a claim the petitioner must present the federal claim to the state courts in a procedural context in which the claims' merits will be

3 - FINDINGS AND RECOMMENDATION

considered. Castille v. Peoples, 489 U.S. 346, 351-52 (1989); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1984; Turner v. Compoy, 827 F.2d 526, 529 (9th Cir. 1987), cert. denied, 489 U.S. 1059 (1989).

If a petitioner has failed to present a federal constitutional claim to the state's highest court (i.e., has failed to exhaust state remedies) and can no longer do so because of a procedural bar, that claim is procedurally defaulted. Boerckel, 526 U.S. at 848, citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). Once a petitioner has procedurally defaulted a claim, federal habeas corpus review is barred unless the petitioner can demonstrate: (1) cause for the procedural default, and (2) actual prejudice from the failure. Edwards v. Carpenter, 529 U.S. 446, 451 (2000), Coleman, 501 U.S. at 750; see also, Wainwright v. Sykes, 433 U.S. 72 (1977); Murray v. Carrier, 477 U.S. 748 (1986); Hughes v. Idaho Bd. of Corr., 800 F.2d 905 (9th Cir. 1986).

Cause for a procedural default exists only if petitioners "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. Prejudice exists only if petitioners show that the procedural default "worked to [petitioner's] actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Demonstrating a mere possibility of prejudice is insufficient. Id.

4 - FINDINGS AND RECOMMENDATION

Procedural defaults may also be excused by demonstrating a "fundamental miscarriage of justice." Edwards v. Carpenter, 529 U.S. 446, 451 (2000). To establish the fundamental miscarriage of justice exception to the exhaustion requirement requires a showing of actual innocence. Schlup v. Delo, 513 U.S. 298, 329 (1995); Calderon v. Thompson, 523 U.S. 538, 559 (1998).

Petitioner raised all of the claims he alleges in this proceeding to the post-conviction (PCR) trial court. See, Exhibit 113, Second Amended Petition for Post-Conviction Relief, pp. 4-8. However, on appeal from that court's decision, petitioner only raised three of his First Claim for Relief's sub-parts. First, he argued that trial counsel failed to advise him that the state was required to prove the charges beyond a reasonable doubt, that he had the right to testify or not to testify, and that he had the right to confront witnesses and to compulsory process. Exhibit 141, Appellant's Opening Brief, p. 10. Those claims correspond to First Claim for Relief subpart (B)(3)(a) of the Petition in this case. See, Petition (#2) Exhibit B p. 1-2. Second, he argued that he did not understand the maximum possible sentence he could face. Exhibit 141, Appellants Opening Brief, p. 10. That claim corresponds to First Claim for Relief subpart (B)(3)(b) of the petition in this case. See, Petition (#2) Exhibit B p. 1-2. Finally, he argued that he did not

5 - FINDINGS AND RECOMMENDATION

know he could be deported if he was convicted. *See*, Exhibit 141, Appellants Brief, p. 3-5. That claim corresponds to the claim alleged in First Claim for Relief subpart (B)(3)(c) in the petition before the court. *See*, Petition (#2) Exhibit B, p. 1-2. Plaintiff did not raise any of the other claims alleged in this proceeding in his PCR appeal.

Petitioner is now barred under Oregon law from filing any additional appeals or PCR proceedings, and therefore cannot "fairly present" any additional claims to the Oregon courts.[2] Therefore, the claims alleged in petitioner's First Claim for Relief sub-parts (B)(1), (B)(2) and (B)(4) and Second Claim for Relief are procedurally defaulted.

Petitioner "substantially agrees with respondent's procedural analysis, (but) asserts 'cause and prejudice' for such procedural default." Petitioner's Reply (#24) p. 1. Petitioner argues that the failure to exhaust his claims "can be attributed to the state's failure to provide him with 'suitable counsel' as required under state law, which ...

---

[2]

ORS 138 requires that direct appeals be filed not later than 30 days after the judgment or order appealed from was entered in the register. ORS 138.650 requires PCR appeals to be filed within 30 days after the entry of final judgment. ORS 2.520 requires petitions for review to the Oregon Supreme Court to be filed within 35 days from the date of the Court of Appeals's decision. *See also*, ORAP 9.05(2) (same). Finally, ORS 138.550(3) provides that all PCR claims must be asserted in the original or amended petition unless they could not reasonably have been asserted therein, and any claims not so asserted are deemed waived.

6 - FINDINGS AND RECOMMENDATION

amounts to cause and prejudice to excuse any procedural failure." Id.

Petitioner "acknowledges he has no constitutional right to effective assistance of post-conviction counsel" but argues that "he has a right to a sufficient state process for exonerating his claims." Petitioner's Reply (#24) p. 2. Petitioner argues that Oregon's Post-Conviction Hearings Act mandates that petitioner be provided "suitable counsel" to assist him in post-conviction relief proceedings, ORS 138.590(4), and that the state's "failure to provide suitable counsel was particularly harmful to petitioner because PCR appellate counsel dropped petitioner's meritorious claims." Petitioner's Reply (#24) p. 3.

In Coleman, the Supreme Court held that because there is no constitutional right to counsel in post-conviction proceedings, the actions of PCR counsel cannot be constitutionally ineffective assistance amounting to "cause" to excuse a procedural default. Coleman, 501 U.S. at 752-57. However, in the recent case of Martinez v. Ryan, 2012 WL 912950 (March 20, 2012) the Supreme Court held that inadequate assistance of counsel at initial review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel at trial.

The Martinez decision is distinguishable from Coleman and

7 - FINDINGS AND RECOMMENDATION

does not help petitioner in this case because as explained by the Court: "[I]n *Coleman*, counsel's alleged error was on appeal from an initial-review collateral proceeding. Thus, his claims had been addressed by the state habeas trial court. This marks a key difference between initial-review collateral proceedings and other collateral proceedings. Here, where the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise the ineffective-assistance claim, the collateral proceeding is the equivalent of the prisoner's direct appeal as to that claim because the state habeas court decides the claims merits, no other court has addressed the claim, and defendants 'are generally ill equipped to represent themselves" where they have no brief from counsel and no court opinion addressing their claim." *Martinez v. Ryan*, *supra*, p. 5 (quoting *Halbert v. Michigan*, 545 U.S. 605).

The Court went on to hold: "Thus it follows that, when a State requires a prisoner to raise a claim of ineffective assistance at trial in a collateral proceeding, a prisoner may establish cause for a procedural default of such a claim in two circumstances: where the state courts did not appoint counsel in the initial-review collateral proceeding for an ineffective-assistance-at-trial claim; and where appointed counsel in the initial-review collateral proceeding, where

that claim should have been raised, was ineffective under *Strickland v. Washington*, 466 U.S. 668." *Id.*

Neither of these circumstances exists in the present case. Petitioner had appointed counsel in his initial-review collateral proceeding (ie. PCR trial). His attorney in that proceeding raised all of the claims petitioner seeks to raise in the present proceeding. Thus, the state habeas trial court was afforded an opportunity to address petitioner's claims. The claims are unexhausted because petitioner's PCR appellate attorney's did not raise them on appeal from the PRC trial court's decision denying relief. Petitioner has not cited any authority for the proposition that a PCR appellate attorney's conduct may be sufficient cause to excuse procedural default.

I find that petitioner has not established cause for his failure to exhaust the claims alleged in his First Claim for Relief Grounds A, (B)(1), (B)2), (B)(4) and his Second Claim for Relief, or established entitlement to the fundamental miscarriage of justice exception to the exhaustion requirement.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, habeas relief may be granted only when a state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceedings." 28 U.S.C. § 2254(d); Wiggins v. Smith, 539 U.S. 510, 520 (2003).

A state court's decision is "'contrary to' federal law if it fails to apply the correct controlling Supreme Court authority or comes to a different conclusion ... [from] a case involving materially indistinguishable facts." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (citing Bell v. Cone, 535 U.S. 685, 694). The Supreme Court has held that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409 (2000).

In addition, under 28 U.S.C. § 2254(d)(2), "a determination of a factual issue made by a state court shall be presumed to be correct.. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Miller-El v. Cockrell, 537 U.S. 322, 351 (2003).

"[I]t is past question that the rule set forth in Strickland, qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"

Williams v Taylor, supra at 391. Under Williams, a petitioner may therefore be granted habeas corpus relief on a claim of ineffective assistance of counsel only if the decision of the state court was contrary to, or an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984).

Under Strickland, a claim that counsel's assistance was so ineffective as to require reversal of a conviction has two components. First, the petitioner must show that counsel's performance was deficient; second, the petitioner must show that the deficient performance prejudiced the defense. Id. at 687.

The first prong of the Strickland test required the petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness. Strickland, supra at 688. The second component of the test requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome." Id.

In Bell v. Cone, 535 U.S. 685 (2002), the Court reiterated that when considering ineffective assistance of counsel claims:

> [J]udicial scrutiny of a counsel's performance must
> be highly deferential and that every effort [must]

11 - FINDINGS AND RECOMMENDATION

> be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Bell, 535 U.S. at 695 (citations and quotations marks omitted).

When considering ineffective assistance of counsel claims under 28 U.S.C. § 2254(d), "it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

The general nature of the Strickland test combined with the deference prescribed by § 2254(d) combines to require the federal court not to evaluate the state court's determination itself, but whether the state court's determination was unreasonable. Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009) (citing Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

In his First Claim for Relief Ground (B)(3) petitioner alleges that his waiver of right to a trial by jury and agreement to proceed with a stipulated facts trial was not knowing, voluntary and intelligent for the following reasons:

> (a) At the time of waiving his right to trial by jury and stipulating to facts sufficient to result in his conviction on all 27 indicted counts,

petitioner was not aware of the maximum and minimum terms of incarceration applicable to this conviction offenses, of his right to require the state to prove those convictions beyond a reasonable doubt, of his right to testify at his own trial, of his right to confront witnesses against him and of his right to call witnesses in his own behalf. Neither the trial court not (sic) petitioner's attorney advised him of these rights.

(b) Trial counsel and the trial court failed to advise petitioner that the court had authority to impose consecutive sentences upon petitioner of more than twice the sentences requested by the state and that the court could impose any sentences consecutively to petitioner's Multnomah County sentence. At the time of agreeing to waive jury and proceed by way of stipulated facts, petitioner believed that he (sic) maximum term of incarceration which could be imposed on him was 30 months. Petitioner was not aware that the court had the authority to impose additional sentences consecutive to the sentences petitioner received in Multnomah Count (sic). Petitioner received combined sentence of 117 months in prison which were also imposes (sic) to petitioner's Multnomah County sentences.

(c) Trial counsel and the court failed to advise petitioner that he could be deported as a result of his convictions upon a stipulated facts trial. Had petitioner known that his stipulation could result in his deportation, he would not have accepted the stipulation but would have proceeded to trial.

Petition (#2) Exhibit B p. 1-2.

Petitioner raised the claim alleged in (B)(3)(a) to the post-conviction court. Exhibit 113, Second Amended Petition for Post-Conviction Relief, pp. 5-6.

In denying relief, the court made factual findings as follows:

7.   Petitioner's agreement to a stipulated facts

13 - FINDINGS AND RECOMMENDATION

trial was knowing, voluntary, and intelligent. Petitioner understood the jury trial rights he was giving up, the severity of this (sic) possible sentences, and that he could be deported. [trial counsel] advised petitioner of his various trial rights. Petitioner was convicted, in an entirely separate Multnomah County case, following a jury trial in December 2002. By the time petitioner opted for a stipulated facts trial in Washington County in October 2003, he remembered all of the rights he had earlier been advised of and waived in Multnomah County in December 2002 (and seen played out at his jury trial in Multnomah County in December 2002). Petitioner signed a written jury trial waiver in Washington County and represented to the Honorable Suzanne Upton that it was his voluntary decision to waive those jury trial rights.

Exhibit 139, Findings of Fact, Conclusions of Law, p. 6).

In addition the court found that "[t]he affidavits of [trial counsel] are persuasive and more credible than petitioner's allegations." *Id.* at 5.

Trial counsel stated in his affidavit:

In the course of discussing this option with Mr. Tatarinov, I reviewed the jury trial rights he would be surrendering if he opted to have a stipulated facts trial, e.g., the right to require the state to prove his guilt beyond a reasonable doubt, his right to testify or not to testify at his own trial, his right to confront the witnesses against him, including my own cross-examination of such witnesses, and his right to have me call witnesses in his own behalf. I also reviewed with Mr. Tatarinov the one page description of the stipulated facts and explained that, based on the facts recited, the trial judge would find Mr. Tatarinov guilty on all counts.

Exhibit 125, Affidavit of Chance Fewel, p. 2-3.

Petitioner stated in the deposition he gave in

14 - FINDINGS AND RECOMMENDATION

preparation for his PCR trial that he was aware that he could have gone to trial, "(b)ut all the rights, I can't remember all the rights." Exhibit 134, Deposition of Roman T. Tatarinov, p. 33. When asked whether it was fair to state that his claim concerning not being advised of his rights was essentially that trial counsel did not advise him of the maximum possible sentence, he responded "yes." *Id.*

Although petitioner claims he was never advised he could receive a sentence as lengthy as he received, his claim is contradicted by trial counsel's affidavit. As noted above, the PCR court found that counsel's affidavit was more credible than petitioner's testimony.

Petitioner has not introduced any clear and convincing evidence that contradicts the PCR court's findings of fact. Therefore, they are presumed to be correct. *Cockrell*, 537 U.S. at 340. The facts establish that trial counsel advised petitioner of his jury trial rights before petitioner agreed to a trial by stipulated facts. Therefore counsel's performance in this regard was not fall below an objective standard of reasonableness and was not constitutionally deficient under *Strickland*.

In petitioner's First Claim ground (B)(3)(b) petitioner alleges that his trial counsel was ineffective because he did not advise petitioner that the trial court had the authority

15 - FINDINGS AND RECOMMENDATION

to impose consecutive sentences. Petitioner raised this claim in his PRC trial. Exhibit 113, Second Amended Petition for Post-conviction Relief, p. 6. The PCR court found that "petitioner knew that he could receive consecutive sentences on all 27 counts, if the trial court so chose to impose such a sentence, and [trial counsel] informed petitioner of this possibility." Exhibit 139, Findings of Fact, Conclusions of Law, p. 6. This factual finding is presumed to be correct because petitioner has not introduced any clear and convincing evidence to the contrary. Moreover, it is supported by the record which indicates at counsel informed petitioner that the district attorney was recommending a 52-month sentence, but he also "cautioned [petitioner] that the trial judge would not be bound to follow the recommendations of either party and would have the authority to impose such sentence as the court deemed appropriate." Exhibit 125, Affidavit of Chance Fewel, p. 3.

Trial counsel told petitioner that it was possible the court would sentence him somewhere in between his and the district attorney's recommended sentences. *Id.* But he also warned petitioner that "at least theoretically, it was possible that all of the sentences on his Washington County convictions could be imposed consecutively, and could be imposed consecutively to the prison sentence he was already serving as a result of his Multnomah County convictions." *Id.*

16 - FINDINGS AND RECOMMENDATION

Although petitioner claimed otherwise, as noted above, the PCR court found that trial counsel's affidavit is more credible than petitioner's testimony.

The record is clear that trial counsel fully advised petitioner of the sentence possibilities and was not constitutionally deficient for failing to do so.

In petitioner's First Claim Ground (B)(3)(c) Petitioner alleges that his trial counsel was deficient for failing to advise petitioner that he could be deported as a result of his convictions. Petitioner raised this claim to the PCR court. Exhibit 113, Second Amended Petition for Post-Conviction Relief, p. 6.

In denying relief on this claim the PCR court found that "petitioner knew that his convictions could result in his deportation. Petitioner was advised of this risk when he entered his pleas in Multnomah County in 2002 and [trial counsel] explained to petitioner that any convictions in Washington County could affect petitioner's immigration status." Exhibit 139, Findings of Fact, Conclusions of Law, p. 6. This factual finding is presumed to be correct and is supported by trial counsel's affidavit which states that counsel "explained that regardless of the length of prison sentences imposed, [petitioner's] Washington County convictions could, and very likely would, result in [his]

17 - FINDINGS AND RECOMMENDATION

deportation." Exhibit 125, Affidavit of Chance Fewel, p. 3.

Petitioner has failed to present any clear and convincing evidence to dispute the PCR court findings and counsel's affidavit, and I find that counsel's representation did not fall below an objective standard of reasonableness by failing to advise petitioner that he could be deported as a result of his convictions.

Even if petitioner's counsel was deficient in one of the respected alleged in his petition, I find that petitioner has failed to establish the second (prejudice) prong of the *Strickland* test.

To prove that the choice to stipulate facts resulted in prejudice, petitioner must prove that, but for the decision, the verdict would have been different. Lang v. Callahan, 788 F.2d 1416, 1418 (9th Cir. 1986).

In this case, petitioner "had no defense to the charges." Exhibit 125, Affidavit of Chance Fewel, p. 2. The PCR court found that if petitioner had opted for a jury trial, the jury would have found him guilty in light of the overwhelming evidence against him. Exhibit 139, Findings of Fact, Conclusions of Law, p. 7.

Petitioner has not alleged any facts, or established any evidence to support a conclusion that a jury verdict would have been any different than the verdict under stipulated

18 - FINDINGS AND RECOMMENDATION

facts. Petitioner failed to prove otherwise during the PCR proceeding, and the PCR court correctly applied *Strickland* in denying relief on his claims. That decision is entitled to deference and is correct on the merits.

Based on all of the foregoing, petitioner's Petition (#2) should be denied. Petitioner's Motion for an Evidentiary Hearing and Renewed Motion for Appointment of Counsel (#25) should be denied. This proceeding should be dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

## Certificate of Appealability

*Should petitioner appeal, a certificate of appealability should be denied as petitioner has not made a substantial showing of the denial of a constitutional right. See, 28 U.S.C. § 2253(c)(2).*

DATED this 2 day of May, 2012.

_____
Thomas M. Coffin
United States Magistrate Judge